## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

JUN 1 4 2007

~~████████████████~~

DAVID LUCAS, 180728,
100 Warrior Lane
     PETITIONER,
Bessemer, Alabama 35023
vs.


Judge Advocate General
NAVAL CRIMINAL INVESTIGATIVE
SERVICES,


     RESPONDENTS.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case: 1:07-mc-00265
Assigned To : Robertson, James
Assign. Date : 6/14/2007
Description: Miscellaneous

Request for Rule 27 Petition
For Perpetuation of Evidence

## RULE 27 PETITION For Perpetuation of Evidence

     Comes now David Lucas, petitioner in the above style action and files with this Court, pursuant to rule 27,F.R.Civ.P., a petition for Pre-Action Discovery utilizing Rule 34 or 45, Fed.R.Civ.P. and states the following in support thereof:

1.    The petitioner expects to be a party under title 10,USCS § 869 in the United States Navy - Marine Corps Court of Criminal Appeals , raising a claim of Actual Innocence to a crime and conviction the petitioner was subject to while in the U.S. Navy but was unable to raise at the present time due to the lack of key Evidence – A DNA test performed by the Navy  - but not used at the Court-martial and currently in the custody and control of the Naval Criminal Investigative Service and ~~Judge Advocate General~~, Judge Advocate General, the Agencies that Authorized the test for the Navy.

2.    The petitioner plans to raise a claim of Actual Innocence to the crime convicted of under § 10 USC 861 et seq, and states that the ~~Perpetuation~~ Perpetuation the petitioner seeks is of paramount importance to the petitioner proving the claim of Actual Innocence. The petitioner seeks the results of the DNA test performed at the insistence of the prosecution,

**RECEIVED**

JUN 0 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

but not used at the trial against the petitioner, nor turned over to the defense at trial or any time there after. The petitioner believes that the result of the DNA test will show that the petitioner was *Excluded as a possible* Crimes he stand *Source of the Semen stains in A* convicted of and corroborate the testimony of the victim who stated, at trial, that the petitioner was not one of her attackers and the petitioner own testimony to the same effect.

3. The petitioner expects the adverse parties to the following:

- Naval Criminal Investigative Service
  Headquarters
  716 Sicard Street, S.E., suite 2000
  Washington Naval Yard, DC. 20388-5380

- Linda M. Riddle, *Custodian of Records*
  Information and Privacy Coordinator
  Naval Criminal Investigative Service
  Headquarters
  716 Sicard Street, S.E., suite 2000
  Washington Naval Yard, DC. 20388-5380

- Department of the Navy
  Headquarters
  716 Sicard Street, S.E., suite 2000
  Washington Naval Yard, DC. 20388-5380

- ~~Custodian of Records~~
  ~~Criminal Department~~
  ~~716 Sicard Avenue~~
  ~~Somewhere, Somewhere~~

4.  The name of the Agency that the petitioner expects discovery to be acquired from
    is the following:

- ~~Criminal Division~~  Office of the Judge Advocate General
  ~~FBI~~  for the Navy- Marine-Corps
  ~~Central Records~~  1322 Patterson Ave, S.E., suite 300
  Washington Naval Yard, D.C. 20388-5066

- Naval Criminal Investigative Service
  Headquarters
  716 Sicard Street, S.E., suite 2000
  Washington naval Yard, DC. 20388-5380

The petitioner expects the DNA evidence (the final test results) to show that he was and
is Actually innocent of the crimes he stand convicted of and was and is excluded as a
possible source of the semen stains taken from the victim.

5.  The petitioner ask this court to issue a:

    a.  Court Order, pursuant to ~~Title 18 USC 3771, et seq.~~ **Rule 34, Fed R.Civ.P** directing Linda M.
        Riddle of the NCIS to produce Certified copies of all material from the
        Final DNA test result performed in 1989 with David Lucas as one of the
        possible suspects and Anna Edwards as the victim. Included, but not
        limited to, in the test results, identical copies of the Autorads and all
        statistical analysis and all other relevant documents related to the DNA
        testing process and results.

    b.  Court Ordered Subpoena, pursuant to ***Rule 45,F.R.Civ.P***, directing NCIS and
        Judge Advocate General ~~The FBI Division~~ to produce Certified copies of all material from the Final DNA
        test result performed by them in 1989 with David Lucas as one of the
        possible suspects and Anna Edwards as the victim. Included, but not
        limited to, in the test results, identical copies of the Autorads and all
        statistical analysis and all other relevant documents related to the DNA
        testing process and results.

Dated: 26 March 07                    Signature: David Lucas


## STATEMENT OF VERIFICATION

This is to verify that David Lucas has initiated a Rule 27 Pre-Action Discovery action seeking the Final Analysis of a DNA Test conducted by an Independent Laboratory for the NCIS, at the insistence of one Lt. Donald Brown, USN in 1989, San Diego, CA, at 32nd Street Naval Station. The purpose of the Pre-Action discovery is not to harass anyone, but designed to see if there exist evidence that will substantiate the petitioners claim of Actual Innocence. As required by the rules of Court, A Notice of Intent is also filed and will be served on the Respondents as the rules of Court dictate.

I swear, under penalty of perjury that the foregoing is a true statement.

Dated: 26 March 07                    Signature: David Lucas

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID LUCAS, 180728,           )
                               )
    PETITIONER,               )
                               )
vs.                            )          CASE NO.: _____
                               )
                               )
Judge Advocate General         )
NAVAL CRIMINAL INVESTIGATIVE   )
SERVICES,                      )
       F                    )
                               )
    RESPONDENTS.              )


## NOTICE OF INTENT TO SEEK A COURT ORDER FOR
### The Perpetuation of Evidence

    Take notice that upon the expiration of thirty (30) days from the date of service of

the notice of David Lucas, will apply to United States District Court for the

District of Columbia for the issuance of a Court Order pursuant to rule 34 or

45,F.R.Civ.P., for a Pre-Action Discovery directed to Linda M. Riddle, NCIS, The

Department of the Navy, and ~~Orchid Diagnostics~~ Judge Advocate General whose addresses are as follows:


- Linda Riddle, NCIS, & DON
  Headquarters
  716 Sicard Street, S.E., suite 2000
  Washington Naval Yard, DC. 20388-5380


- Custodian of Records
  ~~Orchid Diagnostics~~ Judge Advocate General
  ~~_____ Avenue~~ 1322 Patterson Ave, S.W., suite 300
  ~~_____,_____~~ Washington Naval Yard, DC ~~_____-____~~
                                        20374-5066

To produce the document specified to in the Court Order pursuant to the Petition for Pre-Action Discovery under rule 27, Fed. R. Civ.P. .

Signature: _David Lucas_____

David Lucas

Exhibit A

**AFFIDAVIT**

State of Alabama,

Jefferson County,

**BEFORE ME,** the undersigned authority, personally appeared David Lucas, who first being duly sworn, deposes and says as follows:

In 1989, while serving in the U.S. Navy in San Diego, CA., I was court-martialed and found guilty of rape and sodomy. At this trial, the governent's expert witness (Thomas Kotowski) stated, while on the witness stand, that a DNA test was done on samples from the rape kit but was not completed at the time of the trial, as far as he knew. Prior to the Court-Martial, the prosecution stated that all the government evidence was turned over to the defense and that:

> "The government is aware of no evidence tending to exculpate the accused or to reduce the seriousness of the offenses, nor any evidence indicating his innocence."

Mr. Kotowski stated that he was directed by Lt. Donald M. Brown, Jr., JAGC, USNR trial counsel to submit samples from the rape kit to Lifecode Corps for DNA testing.

Prior to this Court-martial, the prosecution did not disclose the fact that a DNA test was being conducted. At trial no DNA evidence was produced or used at trial. After the Court-Martial and the guilty verdict and during the appellate process, the government did not turn over to the defense the final DNA test resluts. In 2003, after receiving the trial transcript and supporting documents from the appellate counsel, I discovered that a DNA test was ordered to be performed on the rape kit.

At that time I wrote the U.S. Army Criminal Investigation Laboratory for a copy of the DNA test results mentioned in the

07-265

**FILED**

JUN 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2 May 1989 ABO Blood Group test conducted by them. I received

a response in 17 March 2003 informing me that their lab could

not release the information and that I should request the inform-

mation from the U.S. Army Crime Records Center in Ft. Belvoir,

VA. The CRD informed me that they "no longer maintains inform-

ation on the test." They suggested I contact the Naval Criminal

Investigative Service in Washington, D.C. Upon further corres-

pondence with the CRC, I obtained the name and address of the

lab that conducted the DNA test.

I contacted NCIS and requested a copy of the final DNA test

results under the FOIA/PA. The NCIS sent me a copy of the same

ABO blood grouping test I already had but would not send me

the DNA test results. I appealed this action and as of this

date, the appeal has not been answered.

At the same time, I also filed a Rule 27 Request for Perpetua-

tion of Evidence to the U.S. District Court in Connecticut dir-

ecting Orchid Labs to produce a copy of the final DNA test re-

sults conducted in 1989. (3:04 MC-232 SRU).

The lab responded that the records are no longer in their

possession. That makes two labs that no longer have records of

the DNA test results conducted in 1989. I next filed a Rule

27 Request for Perpetuation of the DNA Evidence in the U.S.

District Court in San Diego, CA., directing the NCIS and JAGC

offices in SAn Diego, CA., to turn over/produce a copy of the

final DNA test results. This request was denied in 2006. (CV-

05-01109-DMS/BLM). In 2006, I filed a second request in the

U.S. District Court in San Diego, correcting the short-comings

of my first petition, and this petition was also denied. (06-

CV-1521H(CAB)). This case is currently on appeal in the 9th

Circuit Court of Appeals. (#07-55085).

I have been consistent since 2003 in trying to acquire a copy

of the final DNA test results performed in 1989. So far, both

of the labs involved no longer have the records of the DNA test

results. The agencies of the Department of the Navy refuse to

turn over the test results. This is a delay in justice and there

is a strong possibility that these documents will be lost. That

would be a miscarriage of justice. I am attempting to avoid

that outcome. I now know that the DNA test results will exonerate

me and corroborate the victim's statement at trial that I was

not one of her attackers. That is all I seek. This test should

have been disclosed prior to trial. Then I could have requested

a continuance until the DNA test results were in. I was denied

that right by the prosecutor's statement that "no evidence exists

tending to exculpate the accused..." All I seek is the final

DNA test results.

Executed on this the ⊘⊘ day of ᒧ⬭⬭⬭ , 2007.

David Lucas

**SWORN TO AND SUBSCRIBED** before me this ⊘⊘ day of ᒧ⬭⬭ , 2007.

My Commission Expires: 3-16-09    Notary Public

Exhibit B

VOLUME I



UNITED STATES

LUCAS, DAVID L.
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
UNITED STATES NAVY
SEAMAN (E-3)
SERVICE SCHOOL COMMAND
SAN DIEGO, CA

No. S11-9652

RECORD OF TRIAL

by

GENERAL
SPECIAL COURT-MARTIAL

appointed by the
COMMANDER NAVAL BASE
SAN DIEGO, CA

Tried at
SOUTHWEST JUDICIAL CIRCUIT COURTHOUSE
NAVAL STATION
SAN DIEGO, CA

ON

May 16, 18, 22, 23, 24, 25 and 26, 1989

09-265
FILED
JUN 1 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# I N D E X

Introduction of counsel . . . . . . . . . . . . . . . . . 2

Challenges . . . . . . . . . . . . . . . . . . . . . 94, 99

Arraignment . . . . . . . . . . . . . . . . . . . . . . 12

Motions . . . . . . . . . . . . . . . . . . . . . 14, 595

Pleas . . . . . . . . . . . . . . . . . . . . . . . . 43

Findings . . . . . . . . . . . . . . . . . . . . . . . 777

Sentence . . . . . . . . . . . . . . . . . . . . . . . 822

## TESTIMONY

| Name of Witness | Direct Redirect | Cross Recross | Court |
|---|---|---|---|
| **PROSECUTION** | | | |
| SR ANNA EDWARDS | 116,156 | 131, 158 | 160 |
| LCDR MARY B. HASSELQUIST | 116 | 168 | 171 |
| FA RICARDO ADISNA | 173,205 | 206 | |
| AK2 LIONEL M. HARVEY | 194,200,215 | 198, 224 | 200 |
| OS1 NEVELS | 228 | 236 | 242 |
| SR JAMES C. CHATMAN | 245,392 | 368, 402 | 406,410 |
| SR CALVERT VENTURA | 412,493 | 471, 484 | 503 |
| JOHN C. WEIMER | 507 | 535, 554 | 553 |
| RUSSELL KIMLER | 556 | 565, 574 | 570 |
| THOMAS M. KOTOWSKI | 584 | --- | 593 |
| NICHOLAS B. BUSCEMI | 652,685 | 658, 691 | |
| RODNEY R. DEBOSE | 665,699 | 670, 705 | |

DEFENSE
SHARON K. SCHOOLEY                 598          602
SR BARTELME                        604,611      609          612
CDR K.G. BAER                      614,627      622,626      624,629
WILLIE CONEWAY                     630,637      634
ACCUSED                            785          798

E X H I B I T S

| Number/<br>Letter | Nomenclature | Offered | Received |
|---|---|---|---|
| PE 1 | Enl Doc | 102 | 103 |
| PE 2 | Photo (victim) | 157 | 158 |
| PE 3 | Silver Earring | 157 | 158 |
| PE 4 | White Sweater | 157 | 158 |
| PE 5 | Shoes (Black) | 157 | 158 |
| PE 6 | Dress (Black) | 157 | 158 |
| PE 7 | Photos (18) | 554 | 554 |
| PE 8 | Map | 554 | 554 |
| PE 9 | Cert of Auth (8 pgs) | 102 | 103 |
| PE 10 | Drawing - Medical | 172 | 172 |
| PE 11 | NIS Stmt ICO Chatman | 581 | 582 |
| PE 12 | Ventura's Stmt | 581 | 582 |
| PE 13 | Photo - Chatman | 554 | 554 |
| PE 14 | Photo - Ventura | 554 | 554 |
| PE 15 | Waiver of Rts by Accused (same exhibit as PE 16) | | |
| PE 16 | Interview Log 1/89 | 709 | 710 |
| PE 17 | Personal Data | 780 | 780 |
| DE A | Statement | 583 | 583 |

## APPELLATE EXHIBITS

| | | | |
|---|---|---|---|
| AE I | Notice of App | 6 | 6 |
| AE II(a)(b)(c) | Motions | 14 | 14 |
| AE III | Mot for Approp Relief | 14 | 14 |
| AE IV | Stmt of Victim | 15 | 15 |
| AE V | Order to Test | 44 | 44 |
| AE VI | Sani Chg Sht | 44 | 44 |
| AE VII | Members Quest | 44 | 44 |
| AE VIII | Quest Mbr Johnson | 160 | 160 |
| AE IX | Quest Mbr Orton | 162 | 162 |
| AE X | Quest Mbr Enockson | 170 | 170 |
| AE XI | Quest Cdr Orton | 171 | 171 |
| AE XII | Stmt of Facts | 186 | 186 |
| AE XIII | Quest by Mbr | 242 | 242 |
| AE XIV | Pts & Auth - Govt | 297 | 297 |
| AE XV | " "     Defense | 298 | 298 |
| AE XVI | Quest Mbr Enockson | 405 | 405 |
| AE XVII | Quest Mbr Orton | 410 | 410 |
| AE XVIII | Quest Mbr Johnson | 501 | 501 |
| AE XIX | Quest Mbr Enockson | 501 | 501 |
| AE XX | Quest Mbr Orton | 553 | 553 |
| AE XXI | Quest Mbr Enockson | 570 | 570 |
| AE XXII | Quest Mbr Enockson | 571 | 571 |
| AE XXIII | Quest Mbr Orton | 571 | 571 |
| AE XXIV | Quest Mbr Johnson | 571 | 571 |
| AE XXV | Written Motion | 595 | 595 |
| AE XXVI | Quest Mbr Enockson | 612 | 612 |
| AE XXVII | Quest Mbr Gospill | 613 | 613 |
| AE XXVIII | Quest Mbr Johnson | 624 | 624 |
| AE XXIX | Quest Mbr Enockson | 629 | 629 |
| AE XXX | Govt Disclosure | 650 | 650 |
| AE XXXI | Req Gov Instr | 724 | 724 |
| AE XXXII | Req Gov Instr | 724 | 724 |
| AE XXXIII | Prop Instr | 724 | 724 |
| AE XXXIV | Prop Instr | 724 | 724 |

| AE XXXV     | Prop Instr          | 725 | 725 |
| AE XXXVI    | Prop Instr          | 726 | 726 |
| AE XXXVII   | Finding Worksheet   | 181 | 181 |
| AE XXXVIII  | Quest Mbr Enockson  | 770 | 770 |
| AE XXXIX    | Quest Mbr Enockson  | 773 | 773 |
| AE XL       | Sent Worksheet      | 781 | 781 |
| AE XLI      | Appellate Rts       | 824 | 824 |

TC:  No, Your Honor.

MJ:  Do you have your witness ready?

TC:  He should be present.  Could we -- if we didn't, we can go
ahead and get another one.

MJ:  Let's get him down here.  That way we don't have to wait.

TC:  Very well, sir.

(The members were called, entered the courtroom and took their
assigned seats in the jury box).

MJ:  Good morning, please come in and be seated.

(Mr. Thomas M. Kotowski, Army Crime Laboratory, Fort Gillem,
Georgia, was called as a witness by the government, was duly
sworn, and testified as follows):

DIRECT EXAMINATION

QUESTIONS BY THE TRIAL COUNSEL:

Q.  Mr. Kotowski, are you a civilian employee of the United
States Government?
A.  Yes, sir.

Q.  And where are you employed?
A.  I'm employed by the United States Army Criminal
Investigation in Fort Gillem, Georgia.

Q.  And what are your duties there?
A.  I examine evidence submitted to the laboratory for the
presence of body fluids and hairs.

Q.  And how long have you been so employed?
A.  I originally was there in 1970 during my military service.
At the end of my service in '72, I was offered the same job as

civilian employee. I worked from '72 until '78 for the Army.
From '79 to '81 I worked for the Ventura County Sheriff's
Department in California. And from '81 to the present, I have
been employed again by the U. S. Army Crime Lab. system.

Q. And how much of your time in your duties do you devote to
the identification of the presence of body fluids and hair?
A. A great majority of the time.

Q. Approximately how much time would you say?
A. 80 to 90 percent.

Q. And that's on a daily basis?
A. Yes, sir.

Q. If you could, how many examinations have you done?
A. I don't know any more. It's been nearly 20 years since I
started.

Q. And you've been doing this primarily for that entire period
of time?
A. Yes, sir.
Q. What kind of study have you in preparation to train yourself
for this endeavor?
A. I have a degree in biology from Aldelpha (phonetic)
University on Long Island, New York. I received my initial
training in Europe, and have been going to various courses in
between.

Q. Have you ever previously qualified as an expert in a trial?
A. Yes, sir.

Q. Approximately how many times?
A. I don't know. Over a 100 I would think.

Q. Have you ever failed to qualify as an expert?
A. No, sir.

TC:  Sir, at this time if I could have the bailiff hand the witness what's been marked as Prosecution Exhibit 9.  And also, if I could have the bailiff hand the members copies of Prosecution Exhibit 9.

The bailiff then did as directed.

Q.  Sir, have you had an opportunity to briefly look at that document?
A.  Yes, sir.

Q.  Do you recognize that document?
A.  Yes, sir., .

Q.  And how is it that you recognize it?
A.  It's on a letterhead military record, and there is a copy of my signature on it.

Q.  Do you recognize that as your signature?
A.  Yes, sir.

Q.  There are some other signatures on there, are you familiar with any of those individuals?
A.  Mr. Choudhry, he works in our tray section.

Q.  And do you recognize his signature?
A.  Yes, sir.

Q.  Is this the document that your laboratory prepares in the regular course of business?
A.  Yes, sir.

Q.  Is it part of your official duties and responsibilities in preparing these kinds of reports?
A.  Yes, sir.

Q.  Was this report prepared in recognition of those duties and responsibilities?

A.    Yes, sir.

Q.    What I would like you to do for us is if you could explain this document, page 1 of this document?

A.    Page 1, on the top is our address.   We had a contributing agency in this case from the Marine Corps Recruit Depot in San Diego.   And that's our laboratory number under which we filed this case, and the contributor case number, the NIS number. The next line is a suspects listed on the laboratory request.

Q.    And, as you say, suspects listed on the laboratory request. What's the laboratory request?

A.    That's a document we receive listing the evidence which is prepared by the submitting agency.

Q.    Continue, sir.

A.    The rest of the page and part of the second page is a listing of all the exhibits we received together with the voucher number on which these items are submitted to the laboratory.   The evidence voucher number.

Q.    What do you do with this evidence that's received?   What happens to it at the laboratory?

A.    Originally, it's booked into the laboratory in the evidence room, where the outer wrapping of the package is slit and the laboratory request is removed from the outer package.   The package is normally not completely opened, just opened far enough to remove the laboratory request.   It then assigned a case number and stored in the evidence room until it is ready for examination, until it is assigned to somebody for examination.   In this case, it was removed from the evidence room by Mr. Choudhry, who did his examination and then turned it over to me for my examination.   I then passed on the one item for making a prints examination to Mr. Thomas in the Latent Print Division.

Q.    Do you then retrieve these items for your examination?

A.    Yes, sir.

587

Q. And would these items that are listed in here -- the various items listed in here, were they retrieved and examined by you and others?

A. Yes, sir.

Q. And were findings made in relation to those examinations?

A. Yes, sir.

Q. Where are those findings reflected or reported in this report?

A. On page 2 starting with the heading, "Findings", paragraph 1 for the last signature.

Q. In paragraph 1, it says exhibits in there, some numbers. Can you explain how that system works? I think most of it is self explanatory, but just to make sure.

A. The exhibits are assigned either by us or by the submitting agency, are assigned numbers to make it easier to list them -- to refer to them.

Q. And these numbers that are listed in here in the finds are they consistent, or do they refer back to the numbers listed on the exhibit list?

A. Yes, sir.

Q. Now, I'd like to direct your attention to page 3 of the report. And were you involved in the preparation of the information submitted. I mean the finding on page -- that start on page 3?

A. Starting with paragraph 7, yes, sir.

Q. There are a number of terms and letters and different things under here. Could you explain some that information for us?

A. Okay, the ABO on the blood samples, the ABO refers to the international blood grouping system. The Lewis system is a process system found in blood and other body fluids, and essentially just another blood typing system. The additional advantage of the the Lewis system is that it is very closely linked to the secreta status an individual. By the secreta

status is meant if an individual secretes water soluble blood
group substances into other body fluids such as saliva, semen,
vagina floods.

Q.  What is the significance of that, sir?
A.  From these fluids then, if there is a secreta, it's
possible, sometimes to determine the blood type of an individual.
If an individual is Lewis (a-b+) he is going to be secretus (sic).
In other words, if an individual is Lewis (a-b-), this is so
called non secreta.  That means he does not secrete water soluble
blood group substances into other body fluids, so that's normally
the test used to determine blood type of some body fluids.

Q.  What, if any, effect does that have on the examination which
you would conduct?
A.  In a normal tests used to determine blood types from body
fluids, we would not obtain a reaction.  In rare occasions it is
possible to use another test to determine blood types, but that is
not -- but, that is a very rare occasion.

Q.  Rare occasions that this other test would be used?
A.  Yes.

MJ:  If you could go in just a little bit, in the first
paragraph, there is some other information that is contained.

A.  For emphasis, "sec" and non-"sec" are an explanation of the
status of this individual.  "sec" means secretor and "non-sec"
means nonsecretor  PGM is an enzyme.  It is an abbreviation for
the enzyme, Phosphoglucomutase, and it is found in blood and in
other body fluids.  It is, again, another typing system, found in
body fluids, and there are ten basic common types in this system,
which are designated from "1-", "1+", "2+", "2-1" in any
combination there are.

PEP A is an abbreviation for the enzyme Peptidase A, found
in blood and other body fluids.

589

Q.    Did you find semen on these exhibits?
A.    Yes, sir.

Q.    And that is reflected, how, in your opinion or report?
A.    Paragraph 8 lists the items where I found the semen on. It says that semen was found on Exhibits 1(1), pantyhose, Edwards, 1(3); dress, Edwards, 2(3); sweater, Edwards, 2(5); (1, and (2; slides, Edwards, 2(9); Debris, Edwards, 4(3); Seat pants, Chatman, 6(1; blue jeans, Ventura, and 6(2) Underpants, Ventura.

Q.    Okay, now, sir, how do you make these determinations? The tests done to make that determination?
A.    To determine a presence of semen, there is one or two preliminary tests which show us the area where we should look for the presence of semen. To confirm the presence of semen, we prepare microscope slides and actually identify spermatozoa under the microscope. To obtain types from the semen stains, they cut out small pieces of the material, itself, on which the semen stains were found, and then use these pieces to extract material for typing, either blood typing or other typing procedures.

TO:  I ask the bailiff to hand the witness what has been marked as Prosecution Exhibit 6 for identification.

(The bailiff complied.)

Q.    I will ask you to take a look at that item. That item has a number of what appears to be cuts.
A.    Those were my cuts.

Q.    Those were made by you? And that was for what purpose, sir?
A.    Both for our typing procedures and to submit pieces of this material to LIFE COACH Corporation for DNA typing.

TO:  If the bailiff can retrieve the exhibit from the witness.

591

(The bailiff complied.)

Q.    Just to, again, wrap it up, to find in this report, what
kind of a determination did you make in regard to individuals who
may or may not -- were you able to draw any conclusions as to
individuals who may or may not have had sexual intercourse or
contact of a sexual nature with the victim, Miss Edwards, in this
case?
A.    Well, there were only five or six blood samples submitted,
and on the results, based on here, I could draw the conclusion
that four individuals might have been involved, and that, on the
fifth individual, I could not draw any conclusions to his
contributions to the semen stains, because he has the same type:
PGM type and PEP A type as Edwards.

Q.    And which individual was that?
A.    It was Lucas.

Q.    For your purposes, was he masted in your----
A.    Yes, sir.

Q.    And that was for the reasons that you have indicated to us?
A.    Yes.    Edwards is a PGM 1+ and Lucas is a PGM 1+.

Q.    What does the term "masted" mean?
A.    The same typing reactions could also have been obtained
from Edwards.
Q.    The conclusions that you have indicated for us, are they
reflected in your report?
A.    Yes, sir.

Q.    And where are they reflected in the report?
A.    Well, they are reflected on page 5, under "CONCLUSIONS."
Page 5 through, well, the first half of page 6.

Q.    So, of these individuals, other than Lucas, in other words,
Ventura, Hill, Chatman and Howlett, were they included in the
individuals who were possible sources?

592

CA II is Carbonic Anhydrase II.  It is, again, a system found in blood.  You cannot determine that in serum.

Q.  Okay.  And are there designations in both PEP A and in CA II?

A.  These common types are 1, 2-1, and 1 or any combination.

Q.  And these different factors are used in your examination or your determination of body fluids?

A.  Yes, sir.

Q.  And these are factors that you use to make your determinations?

A.  Yes, sir.

Q.  Do you conduct tests to make these determinations as to type?

A.  Yes, sir.

Q.  And are you familiar with the tests that are used?

A.  Yes, sir.

Q.  And were standard tests used in this case?

A.  Yes, sir.

Q.  And are these the same tests that you have used throughout your career?

A.  As these tests became available.

Q.  In other words, you used the latest tests available?

A.  We generally try to keep up with them, yes, sir.

Q.  Now, I would like to direct your attention to page 4.  On here, where it says, "The following typing results were obtained:" there are some exhibits and then there are some numbers.  Could you explain that area of your report for us.

A.  Okay.  These are the results I obtained from my typing experiments on the semen found on the various exhibits.

A.    Those four individuals are included as possible sources of the semen, yes, sir.

Q.    Let me ask you, in your report, did you discover, or did you find semen stains anywhere on the clothing that would have been the upper torso of the alleged victim in this case?
A.    I believe that there was semen stains on the upper right collar area.

Q.    And is that----
A.    Of her dress.

Q.    ----and is that reflected in your report, sir?
A.    Yes, sir.

Q.    Where is that reflected?
A.    It's on paragraph 8 under the Exhibit Listing, 1(3), right shoulder area, right front collar area.  Area #1 and Area #2.  It's on page 4.

TC:   Thank you, sir.  Your witness.

DCC:  No questions.

MJ:   Any questions, court members?

CR:   Appellate Exhibit XXIV.

MJ:   This is Appellate Exhibit XXIV, a question submitted by one of the court members.

### EXAMINATION OF THE COURT

Questions by a court member, through military judge:

Q.    Sir, you spoke of further DNA testing, is that correct?
A.    Yes, sir.

Q.    Can you offer a general explanation of what that means?

A.    That is testing which is -- involves entry of DNA molecules in the semen -- in the sperm -- the sperm heads around the cellular material, molecular material in the cell, and that is more specific where the tests we can carry, but at the moment; however, it is a moment that very few people would gear up to that. We are still in the process of gearing up, but that will take about another year until we have all of the proper, licenses for radioactive camera. We have to have a special laboratory for the storage of radioactive material.

Q.    So was there DNA testing conducted----

A.    That was conducted by LIFE COACH, but I have not received a report back yet from them.

Q.    Does that mean that the results of that testing are still outstanding?

A.    As far as I know, yes, sir.

MJ:    Further questions from the court members?

(There was a negative response from all members.)

MJ:    Counsel for either side have any further questions?

TC:    No, sir.

ICC:    No, sir.

MJ:    Carry on.  Thank you for your testimony.  You are excused.

(The witness withdrew from the courtroom.)

TC:    Sir, the Government requests that you publish its exhibits at the appropriate time.  However, we will not publish them now.

The Government has no further evidence at this time.

Exhibit C

DEPARTMENT OF THE ARMY
UNITED STATES ARMY CRIMINAL INVESTIGATION LABORATORY - CONUS
FORT GILLEM
FOREST PARK, GEORGIA 30050-5000




REPLY TO
ATTENTION OF:

CILAC-AD

## CERTIFICATE OF AUTHENTICATION

I Certify that I am the official records custodian of the US Army
Criminal Investigation Laboratory - CONUS; and that the foregoing
report _____ is a true and accurate copy of a report
kept in the official files of this laboratory and maintained by
me IAW AR 25--10-2 and CIDR 195-20.

DATE:    MAY 0 1 1996

RONALD SMITH
Sgt, USA
Deputy Records Custodian

NOTE:  IAW AR 195-2, requests for appearance of Laboratory
Examiners should be made at least 10 working days prior to the
date of the court proceedings.

07-265

# FILED

JUN 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| CRIMINAL INVESTIGATION<br>**LABORATORY REPORT**<br>*CID Regulation 195-20* | | DATE PREPARED<br>2 May 1989 |
|---|---|---|

| PREPARING LABORATORY<br>Commander<br>USACIL-CONUS<br>Fort Gillem<br>Forest Park, GA  30050-5000 | CONTRIBUTOR<br>NISPA<br>Marine Corps Recruit Depot<br>San Diego, CA  92140-5040 | PAGE  01   OF   07 PAGES |
|---|---|---|
| | | LABORATORY CASE NUMBER<br>89-CID431-00296 |
| | | CONTRIBUTOR CASE NUMBER<br>20JAN89-11NT-0101-5FNA |

SUSPECT(S)

CHATMAN, James Calvin; VENTURA, Calvert Manuel; HILL, David Wayne; LUCAS, David Lee
and HOWLETT, Andre R.

EVIDENCE EXAMINED

```
Exhibit 1(1)  - Pantyhose, EDWARDS.  (EV 021-89, A).
Exhibit 1(2)  - Brassiere, EDWARDS.  (EV 021-89, B).
Exhibit 1(3)  - Black dress, EDWARDS.  (EV 021-89, C).
Exhibit 1(4)  - Sweater, EDWARDS.  (EV 021-89, D).
Exhibit 1(5)  - Shoes, EDWARDS.  (EV 021-89, E).
Exhibit 2(1-9) - Rape Kit EDWARDS containing:  (EV 022-89, B).
   Exhibit 2(1) - Fingernail scrapings left hand.
   Exhibit 2(2) - Fingernail scrapings right hand.
   Exhibit 2(3) - Swab.
   Exhibit 2(4) - Saliva sample.
   Exhibit 2(5) - Three (3) smears.
   Exhibit 2(6) - Combed pubic hair sample.
   Exhibit 2(7) - Cut pubic hair sample.
   Exhibit 2(8) - Cut head hair sample.
   Exhibit 2(9) - Hair/debris collected from EDWARDS.
Exhibit 3     - Blood sample, EDWARDS.  (EV 022-89, A).
Exhibit 4(1)  - Undershirt, CHATMAN.  (EV 026-89, A).
Exhibit 4(2)  - Sweat shirt, CHATMAN.
Exhibit 4(3)  - Sweat pants, CHATMAN.
Exhibit 4(4)  - Underpants, CHATMAN.
Exhibit 5(1)  - White shirt, HILL.  (EV 027-89, A).
Exhibit 5(2)  - Gray pants, HILL.
Exhibit 5(3)  - Black Vest, HILL.
Exhibit 5(4)  - Black shoes with socks, HILL.
Exhibit 6(1)  - Blue jeans, VENTURA.  (EV 028-89, A).
Exhibit 6(2)  - Underpants, VENTURA.
Exhibit 6(3)  - Shoes, VENTURA.
Exhibit 7(1)  - White shirt, LUCAS.  (EV 029-89, A).
Exhibit 7(2)  - Two (2) black caps, LUCAS.  (EV 029-89, B).
Exhibit 7(3)  - T-shirt, LUCAS.  (EV 029-89, C).
Exhibit 7(4)  - White shirt, LUCAS.  (EV 029-89, D).
Exhibit 7(5)  - One brown and one black cap.  (EV 029-89, E).
Exhibit 7(6)  - Underpants, LUCAS.  (EV 029-89, F).
Exhibit 7(7)  - Red underpants, LUCAS.  (EV 029-89, G).
Exhibit 7(8)  - Gray pants, LUCAS.  (EV 029-89, H).
Exhibit 8(1)  - Blood sample, LUCAS.  (EV 036-89, A).
Exhibit 8(2)  - Head hair sample, LUCAS.  (EV 036-89, B).
Exhibit 8(3)  - Pubic hair sample, LUCAS.  (EV 036-89, C).
Exhibit 8(4)  - Saliva sample, LUCAS.  (EV 036-89, D).
```

CID FORM 72
1 JUN 76

LABORATORY CASE NUMBER 39-CID131-00269                    PAGE 32 OF 37 PAGES

Exhibit 8(5)    - Control sample.  (EV 036-39, E).
Exhibit 9(1)    - Blood sample, CHATMAN.  (EV 038-39, A).
Exhibit 9(2)    - Head hair sample, CHATMAN.  (EV 038-39, B).
Exhibit 9(3)    - Pubic hair sample, CHATMAN.  (EV 038-89, C).
Exhibit 9(4)    - Saliva sample, CHATMAN.  (EV 038-39, D).
Exhibit 9(5)    - Control sample.  (EV 036-89, E).
Exhibit 10(1)   - Blood sample, HILL.  (EV 039-89, A).
Exhibit 10(2)   - Head hair sample, HILL.  (EV 039-39, B).
Exhibit 10(3)   - Pubic hair sample, HILL.  (EV 039-39, C).
Exhibit 10(4)   - Saliva sample, HILL.  (EV 039-39, D).
Exhibit 10(5)   - Control sample.  (EV 039-39, E).
Exhibit 11(1)   - Blood sample, VENTURA.  (EV 040-39, A).
Exhibit 11(2)   - Head hair sample, VENTURA.  (EV 040-39, B).
Exhibit 11(3)   - Pubic hair sample, VENTURA.  (EV 040-89, C).
Exhibit 11(4)   - Saliva sample, VENTURA.  (EV 040-39, D).
Exhibit 11(5)   - Control sample.  (EV 040-99, E).
Exhibit 12(1)   - Blood sample, HOWLETT.  (EV 037-89, A).
Exhibit 12(2)   - Head hair sample, HOWLETT.  (EV 037-89, B).
Exhibit 12(3)   - Pubic hair sample, HOWLETT.  (EV 037-39, C).
Exhibit 12(4)   - Saliva sample, HOWLETT.  (EV 037-39, D).
Exhibit 12(5)   - Control sample.  (EV 037-89, E).
Exhibit 13      - 3 X 5 card with tape lift.  (EV 023-89, C).
Exhibit 14      - Found hair.  (EV 023-89, B).
Exhibit 15      - Ear ring.  (EV 023-89, A).

FINDINGS:

1.  a.  Hairs were removed from Exhibits 1(4), 4(3), 6(2) and 7(4). No hairs were
found on Exhibits 1(1), through 1(3), 2(1), 2(3), 4(1), 4(2), 4(4), 5(1) through
5(3), 6(1), 7(1), 7(2), 7(3) and 7(5) through 7(8).

    b.  Foreign fibers were removed from Exhibits 1(1-4), 3(1-2), 4(1-4), 5(1-3),
6(1-2) and 7(1-8).

    c.  None of the fabrics of Exhibits 1(1-3), 4(1-4), 5(1-3), 6(1-2), 7(1-6) and
7(6) contained fibers suitable for fiber transfer examination:

        (1)  The fibers are too common to be of evidential value.

        (2)  The fibers are microscopically colorless and lack the necessary
distinguishing characteristics.

        (3)  The items have a very low transfer potential.

LABORATORY CASE NUMBER 89-CID131-00269                    PAGE 03 OF 07 PAGES

2.  The clothing of CHATMAN (Exhibits 4(1-4), HILL, (Exhibits 5(1-3)), VENTURA (Exhibits 6(1-2)) and LUCAS (Exhibits 7(1-3)) were examined for colorless acrylic, black acrylic and metallic fibers (silver-color metal coated plastic strips) matching those of EDWARDS' sweater's fibers (Exhibit 1(4)).  No such fibers were found.

3.  Foreign fibers removed from Exhibit 1(1) (EDWARDS' stocking) were examined for red cotton fibers matching with the fabric fibers of LUCAS' red underwear (Exhibit 7(7)).  No such fibers were found.

4.  It should be noted that the fact that no identifiable transfers of textile fibers were detected does not preclude the possibility that the items involved were in contact.

5.  Examination of the left hand fingernail scrapings (Exhibit 2(1)) disclosed the presence of one pink acrylic fiber.  No possible source for this fiber was among the evidence submitted.

6.  No fibers of known evidential value were found in or on Exhibits 5(4) and 6(3).

                                   *signature*
                                   MUHAMMAD Y. CHOUDERY
                                   Forensic Chemist

7.  The submitted control samples typed as follows:

        a.  Blood samples:

| Exhibit | | ABO | LEWIS | | PGM | PEP A | CAII |
|---|---|---|---|---|---|---|---|
| 3 | (EDWARDS) | O | (a-b+) | (sec) | 1- | 1 | 1 |
| 8(1) | (LUCAS) | O | (a+b-) | (non-sec) | 1- | 1 | 2-1 |
| 9(1) | (CHATMAN) | B | (a-b-) | (sec) | 1+1- | 2+1 | 1 |
| 10(1) | (HILL) | B | (a-b-) | (sec) | 2+1- | 1 | 1 |
| 11(1) | (VENTURA) | B | (a-b+) | (sec) | 1+1- | 1 | 1 |
| 12(1) | (HOWLETT) | A | (a-b-) | | 2+1- | 1 | 2-1 |

        b.  Saliva samples:

| Exhibit | | ABO | LEWIS | |
|---|---|---|---|---|
| 2(4) | (EDWARDS) | - | - | |
| 8(4) | (LUCAS) | NR | (a+b-) | (non-sec) |

LABORATORY CASE NUMBER 86-CID131-00269                    PAGE 04 OF 07 PAGES

| Exhibit | ABO | LEWIS |
|---------|-----|-------|
| 9 (4) (CHATMAN) | B | (a-b+) (sec) |
| 10 (4) (HILL) | B | (a-b-) (sec) |
| 11 (4) (VENTURA) | B | (a-b+) (sec) |
| 12 (4) (HOWLETT) | A | (a-b-) (sec) |

sec     = secretor
non-sec = non-secretor
PGM     = Phosphoglucomutase
PEP A   = Peptidase A
CA II   = Carbonic Anhydrase II
NR      = No typing reactions obtained
-       = tested, no results obtained

A secretor is an individual who secretes water soluble blood group substances into body fluids other than blood, such as saliva, semen or vaginal fluids. A non-secretor is an individual who normally does not secrete detectable quantities of these blood group substances into his/her body fluids other than blood. The Lewis system is closely linked to the secretor status of the individual. Le(a-b+) individuals are secretors, while Le(a+b-) individuals are non-secretors. Le(a-b-) individuals can be either secretors or non-secretors.

8. Semen was found on Exhibits 1(1) (pantyhose, EDWARDS), 1(3) (dress EDWARDS), 2(3) (swab, EDWARDS), 1(3) (1-2) (slides, EDWARDS), 2(9) (debris, EDWARDS), 4(3) (sweatpants, CHATMAN), 6(1) (blue jeans, VENTURA), and 6(2) (underpants, VENTURA).

The following typing results were obtained:

| Exhibit | PGM | PEP A |
|---------|-----|-------|
| 1 (pantyhose crotch) | 2+1-1- | 1 |
| 1 (3) (right front shoulder area #1) | 1+1- | 2-1 |
| 1 (3) (right front collar, area #2) | 1+1- | 2-1 |
| 1 (3) (right inside rear, area #3)* | 2+1+1- | 2-1** |
| 1 (3) (lower center front, area #4) | - | - |
| 1 (3) (upper center rear, area #5) | - | - |
| 2 (3) (swab) | 1- | 1 |
| 2 (9) (debris) | - | - |
| 4 (3) (lower outside left leg) | - | - |
| 6 (1) (upper left front, area #1) | 1+1- | - |
| 6 (1) (crotch, area #2) | 1+1- | - |
| 6 (1) (upper left leg, area #3) | - | - |
| 6 (2) (inside fly area, area #1) | 1+1- | 1 |
| 6 (2) (inside crotch, area #2) | - | - |

LABORATORY CASE NUMBER 89-CID131-0                    PAGE 05 OF 07 PAGES

Either no ABO typing reactions were obtained from the above stains or no conclusive
results were obtained.

-    = tested, no results obtained
*    = appears to be mixed with apparent fecal matter
**   = appears to be a mixture of types "1" and "1-1"

All above stains were tested for the presence of amylase (an enzyme typically found
in saliva) with negative results.

CONCLUSIONS:

   (a)   PGM subtyping shows that the stain in the crotch of Exhibit 1(1)
         (pantyhose) originates from more than one individual:

         The "1-" portion can be attributed to EDWARDS; the "2+" and "1-" portions
         however are foreign to EDWARDS and could not have originated from her.
         HILL and HOWLETT can not be excluded as possible sources of the "2-"
         portion.
         CHATMAN and VENTURA can not be excluded as possible sources of the "1-"
         portion.
         Since LUCAS and EDWARDS have the sample PGM type (1+) no conclusion as to
         his possible contribution to this stain can be made.
         The PEP A 1 reaction obtained could be attributed to EDWARDS.

   (b)   CHATMAN can not be eliminated as a possible contributor to the semen
         staining found on Exhibit 1(3) (dress, EDWARDS areas 1, 2, and 3).

   (c)   PGM subtyping shows that the stain in area 3 of exhibit 1(3) (dress
         EDWARDS) originates from more than one individual:
         The "1-" portion can be attributed to EDWARDS; while the "2+" and "1-"
         portions are foreign to her and could not have originated from her.
         HILL and HOWLETT can not be excluded as possible sources of the "2-"
         portion.
         CHATMAN and VENTURA can not be excluded as possible sources of the "1-"
         portion.
         Since LUCAS and EDWARDS have the same PGM type (1+) no conclusion as to
         his possible contribution to this stain can be made.
         PEP A typing results indicate that this stain is a mixture of types PEP A
         1 and PEP A 2-1.
         The PEP A "1" portion could be attributed to EDWARDS, while the "2-1"
         portion could be attributed to CHATMAN.

(d)  The PGM 1+ results obtained from Exhibit 2(3) (swab) can be attributed to EDWARDS.

(e)  Semen stains found on Exhibits 6(1) and 6(2) (clothing VENTURA) are consistent with originating from VENTURA.

(f)  Approximate incidence in the U.S. of:

|                      | Caucasian  | Negro     |
|----------------------|------------|-----------|
| PGM 1+               | 2 in 5     | 3 in 7    |
| PGM 1+1-             | 1 in 6     | 1 in 5    |
| PGM 2-1-             | 2 in 9     | 1 in 5    |
| PEP A 1              | 100 in 101 | 100 in 116|
| PEP A 2-1            | very rare  | 1 in 9    |
| PGM 1+, PEP A 1      | 2 in 5     | 3 in 8    |
| PGM 1+1-, PEP A 1    | 1 in 6     | 1 in 6    |
| PGM 2+1+, PEP A 1    | 1 in 5     | 1 in 6    |
| PGM 1-1-, PEP A 2-1  | very rare  | 1 in 45   |

9.  Hairs were found on Exhibit 1(4) (sweater, EDWARDS) and Exhibit 1(9) (hairs/debris, EDWARDS).  None of these were macroscopically similar to the submitted control hair samples in Exhibits 8(2), 8(3), (LUCAS), 9(2), 9(3) (CHATMAN), 10(2), 10(3) (HILL), 11(2), 11(3) (VENTURA), and 12(3), 12(3) (HOWLETT).

10.  Two (2) Caucasian pubic hairs were found in Exhibit 2(6) (combed pubic hair sample, EDWARDS).  One was macroscopically similar in color to the fragments found in Exhibit 2(7) (cut pubic hair, EDWARDS).  The other pubic hair did not specifically resemble the hair fragments found in Exhibit 2(7), but could have come from the same source.  (See paragraph 11 below).

11.  Exhibit 2(7) (cut pubic hair, EDWARDS) contains macroscopically light brown/blond hair fragments.  These are too short for use as standards in a detailed microscopic comparison.

12.  Exhibit 2(8) (head hair sample, EDWARDS) contains hairs which are macroscopically color-treated from brown to blond.

13.  Hairs were found on Exhibits 4(3) (sweat pants, CHATMAN), 6 (clothing, VENTURA), and 7(4) (shirt, LUCAS).  None of these hairs was macroscopically similar to the hairs found in Exhibits 2(7) and 2(8).

14.  Exhibits 8(2), 8(3), 9(2), 9(3), 10(2), 10(3), 11(2), 11(3), 12(2) and 12(3) all contain macroscopically black Negroid hairs and/or hair fragments.  (Some of these are too short for use in a detailed microscopic comparison).

LABORATORY CASE NUMBER 39-CID131-00269                    PAGE 07 OF 07 PAGES

15.  Unless specifically mentioned above neither semen nor hairs were found on the submitted items.

16.  Exhibits 6(3) and 15 were not examined.

17.  Exhibit 14 (found hairs) contained two hairs and one hair fragment.  One is a light blond Caucasian hair, which could not be further identified.  The other is a dark brown to black body hair.  The hair fragment is too short for further identification.

18.  Per instructions received from Lt. Brown parts of the following stains were cut-out and sent to LIFECODES Corp. on 12 April 1989 via Express Mail (#3024 435 207):

Exhibit 1(1) (crotch), Exhibit 1(3) (areas 1 through 5), 2(3) (remainder of swab), 4(3), 6(1) (areas 2 and 3), and 6(2) (areas 1 and 2).


THOMAS M. KOTIWSKI
Forensic Chemist

19.  Examination of Exhibit 13 did not reveal any latent prints suitable for identification.


WILLIAM M. THOMAS
Latent Print Examiner

Exhibit D



**DEPARTMENT OF THE ARMY**
**US ARMY CRIMINAL INVESTIGATION LABORATORY**
**4553 N 2ND**
**FOREST PARK  GA 30297-5122**

REPLY TO
ATTENTION OF                           March 17, 2003

Operations Division


Mr. David Lucas
180728, 1-70
100th Warrior Lane
Bessemer, AL  35023

Dear Mr. Lucas:

    I received your letter dated March 7, 2003, in which
you requested information under the Freedom of Information
Act (FOIA).

    Unfortunately, I am unable to respond to your request.
The release of information outside the laboratory and
criminal justice system must be approved by the Freedom of
Information Act/Public Affairs Division of the U.S. Army
Crime Records Center (CRC) at Fort Belvoir, VA.  The CRC
should provide you with a response to your request.  I have
forwarded your letter to them.  If you have not heard from
the CRC within a reasonable period of time, then I suggest
you correspond directly with them.  The mailing address is:

    Director, US Army Crime Records Center
    United States Army Criminal Investigation Command
    ATTN:  CICR-FP
    6010 6th Street
    Fort Belvoir, VA 22060-5585

    The point of contact for this memorandum is the
undersigned at (404) 469-7108.

                        Sincerely,


                        ERICA M. GIDION
                        Operations Officer



*AN ASCLD/LAB ACCREDITED LABORATORY (SINCE 1985)*

*07-265*

**FILED**

JUN 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**DEPARTMENT OF THE ARMY**
U. S. ARMY CRIMINAL INVESTIGATION COMMAND
6010 6TH STREET
FORT BELVOIR, VIRGINIA  22060-5506

REPLY TO
ATTENTION OF

APR 0 7 2003

U.S. Army Crime Records Center
(FP03-0795)


Mr. David Lucas
180728, 1-70
100 Warrior Lane
Bessemer, Alabama 35023.

Dear Mr. Lucas:

     This is in response to your Freedom of Information/Privacy
Act (FOIA/PA) requests dated March 7, 2003 and March 21, 2003,
for information pertaining to a DNA test.  Your requests were
received in this office on March 25, 2003 and April 1, 2003.

     The U.S. Army Criminal Investigation Laboratory (USACIL) no
longer maintains information on the test.  Since the USACIL's
involvement appears to be due to a Naval Criminal Investigative
Service (NCIS) investigation, they might maintain test results.
Your request has been forwarded to the NCIS:

     Director
     Naval Criminal Investigative Service
     Headquarters, Code 23C/Rossman
     716 Sicard Street, SE
     Washington Navy Yard, DC  20388-5380

                    Sincerely,

                    Phillip J. McGuire
                    Director, Crime Records Center

Printed o   Recycled Paper



**DEPARTMENT OF THE ARMY**
U. S. ARMY CRIMINAL INVESTIGATION COMMAND
6010 6TH STREET
FORT BELVOIR, VIRGINIA 22060-5506

REPLY TO
ATTENTION OF          APR 0 7 2003

U.S. Army Crime Records Center
(FP03-0795)

Mr. David Lucas
180728, 1-70
100 Warrior Lane
Bessemer, Alabama 35023

Dear Mr. Lucas:

This is in response to your Freedom of Information/Privacy Act (FOIA/PA) requests dated March 7, 2003 and March 21, 2003, for information pertaining to a DNA test. Your requests were received in this office on March 25, 2003 and April 1, 2003.

The U.S. Army Criminal Investigation Laboratory (USACIL) no longer maintains information on the test. Since the USACIL's involvement appears to be due to a Naval Criminal Investigative Service (NCIS) investigation, they might maintain test results. Your request has been forwarded to the NCIS:

Director
Naval Criminal Investigative Service
Headquarters, Code 23C/Rossman
716 Sicard Street, SE
Washington Navy Yard, DC 20388-5380

Sincerely,

Phillip J. McGuire
Director, Crime Records Center

Printed on    Recycled Paper

April 8, 2003

Director
U.S. Army Crime Records Center
United States Army Criminal Investigation Command
ATTN: CICR-FP
6010 6th Street
Fort Belvoir, VA. 22060-5585

Dear Director:

SUBJECT: FOIPA REQUEST

On or about March 20, 2003, I mailed a request to this office asking for approval to acquire a copy of a DNA test that is in the possession of U.S. Army Crime Lab at Fort Gillem in Forest Park, Georgia. This test was performed in 1989 for the U.S. Navy at the request of a Lt. Donald Brown in San Diego, California.

As I stated in my earlier request, I was one of the subjects of this Test that was not used at my Court – Martial in May 1989. I believe that the results of this test would have corroborated the victim's statement that I was not one of the assaulters.

I am now making a second request for a copy of this test under the Freedom of Information/Privacy Act. This information is critical and needed as soon as possible. Can you please process my request as soon as possible?

The Lab #is #89-CIDJ 31-00296. The test was sent to LIFECODES CORP. ON 12APRIL89 via Express mail (#8024-425-20y)

The victims name is Anna Edwards, 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. My # is 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 DOB 06-11-61. If there is any more information that you require of me, please do not hesitate to ask.

Sincerely,

David Lucas

April 8, 2003

Commanding Office
Department of the Navy
Office of the Judge Advocate General
200 Stovall Street
Alexandria, VA.22332-2400

Dear Sir/Madam:

SUBJECT: COPY OF DNA TEST

On or about May 2,1989, A Lab report was completed at the U.S. Army Crime lab at Fort Gillem in Forest Park Georgia. In this report, the Forensic chemist performing the test indicates that samples of the Rape victims kit was sent to an independent Laboratory for DNA testing. The Forensic Chemist testified at the Court Martial held in San Diego Naval Station in May 1989 that the results of this test had not been completed at that time. I have recently acquired the ABO testing report performed in the Crime Lab in Georgia and I am attempting to acquire a copy of the DNA test.

I stated at the Court-Martial in 1989 that I was innocent of the crime and the victim stated that I was not one of her attackers. I now know that the DNA test would have corroborated the victim's statement as well as mines. I am writing you in hopes that you or your office can help me obtain the results of the DNA test that was performed in 1989, that wasn't used or available at the time of my Court – Martial.

As I stated earlier, I am in possession of the ABO Blood Grouping test report that mentions the samples being sent off for testing. The lab name was LIFECODES CORP. The U.S. Army's lab # is #89-CIDJ-31-00296. The test results were completed or dated 2May89. The report states that the samples were sent off to LIFECODES on 12April89 via Express Mail (#8024-425-204). This test was performed in 1989 for the U.S. Navy at the request of a Lt. Donald Brown in San Diego, California.

As I stated in my earlier request, I was one of the subjects of this Test that was not used at my Court – Martial in May 1989. I believe that the results of this test would have corroborated the victim's statement that I was not one of the assaulters.

I am now making a second request for a copy of this test under the Freedom of Information/Privacy Act. This information is critical and needed as soon as possible. Can you please process my request as soon as possible?

The victims name is Anna Edwards, 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. My # is 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 DOB 06-11-61. If there is any more information that you require of me, please do not hesitate to ask.

I would like to clear my name and correct a grave injustice that I have been subjected to for over 14 years. I am hoping that you can help me acquire the test that is in the possession of the U.S. Army Crime Lab in Fort Gillem in Forest Park, Georgia.

– 2 –                                                             April 8, 2003

Any assistance you can provide me would be most appreciated. I know I was innocent and I would like to prove it.


Sincerely,



David Lucas

April 11, 2003

RE:  Lab #89-CIDJ 31-00296 Test Date 2May,89


Erica M. Gidion
Operations Officer
Department of the Army
US Army Criminal Investigation Laboratory
4553 N 2nd
Forest Park, GA. 30297-5122

Dear Erica M. Gidion:

On 10 April,2003, I received a reply from Mr. Phillip J.
McGuire, Director of the Crime Records Center at Fort
Belvoir,VA. Mr Phillips states that the "USACIL NO LONGER
MAINTAINS INFORMATION ON THE TEST."

Based on the language in your letter, I was under the
impression that the information I seeked  had been located
and that the only way you could release it was with the
approval of the Crime Records Centers approval.

 My question to you is Do you or your lab still have the
information I seek in your files? If you do or don't, do you
have the name and mailing address to the Lab that performed
the DNA testing? I believe the Labs name was LIFECODES CORP.

If this information is still available at your Lab, can you
write me and inform me of it's existence? If the information
I seek is not kept by your Lab, Can you provide me with the
mailing address to LIFECODES CORP and the File or Lab # they
used?

Any assistance you can provide me would be most helpful and
appreciated. Thank you for taking the time to read and
respond to my request.

Sincerely,



David Lucas

April 15, 2003

RE: Lab # 89-CIDd31-00296

Director
Naval Criminal Investigative Service
Headquarters, Code 23C/Rossman
716 Sicard Street, SE
Washington Navy Yard, DC 20388-5380

Attention: General Court Martial # SW890052

Dear Director:

SUBJECT: FOIPA REQUEST

In May 1989, I was court martial at the 32nd Street Naval Station on San Diego, California for Rape and Sodomy. I was found guilty by the jury and was sentenced to nine (9) months and not discharged. The victim's name was Anna Edwards. She identified three individuals who raped here I was not one of those individuals, but I was convicted anyway.

A Forensic Chemist from the US Army Crime Lab testified on the results of the test he performed on the Rape kit and stated that he had sent samples to another Lab for DNA testing. At the Trial, He stated that the results were not back yet. I have written the US Army Crime Lab and they directed me to contact your office. I am seeking the results of the DNA test performed by the Independent Lab-LIFECODES Corp.

I am making this request under the FOIPA. I would like ackowledgement from you, indicating if the test results are held by you. If they are, can you tell me what I need to do to receive the final report. This is very important to me because it will prove that I was actually innocent of the crime I was convicted of in the Court Martial. I would like to use this information to clear my name and correct my Military jacket.I would appreciate any help you can provide in helping me in retrieving a copy of the final DNA testing.

My SS# is 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   DOB 6-11-61.

The victims info. Is Anna Edwards   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.

The samples were sent to LIFECODE Corp. for testing on 12April,89 a the insistence of a Lt. Donald Brown, USN via Express Mail (#8024-425-20y).

If you can't provide me with the test, can you provide me with the address to the Lab that performed the test?

Thank you for taking the time to read and respond to this request.

Sincerely,

David Lucas

180728 1-77
100 WARRIOR LANE
BESSEMER, ALABAMA 35023



**DEPARTMENT OF THE ARMY**
**US ARMY CRIMINAL INVESTIGATION LABORATORY**
**4553 N 2ND**
**FOREST PARK GA 30297-5122**

REPLY TO
ATTENTION OF

April 18, 2003

Operations Division


Mr. David Lucas
180728, 1-70
100th Warrior Lane
Bessemer, AL 35023

Dear Mr. Lucas:

    I received your second letter, dated April 11, 2003, referencing my response to you on 17 Mar 03.  As I mentioned in my previous letter, your request was forwarded to the U.S. Army Crime Records Center at Fort Belvoir, VA for action.

    The response provided to you by Mr. McGuire, Director, U.S. Army Crime Records Center is correct.  The United States Army Criminal Investigation Laboratory (USACIL) no longer has any information or documentation regarding your request.

                    Sincerely,

                    Erica M. Gidion
                    Operations Officer



*AN ASCLD/LAB ACCREDITED LABORATORY (SINCE 1985)*

April 24, 2003

RE: LIFECODES INC.

Mrs. Erica M. Gidion,Director
US ARMY CRIMINAL INVESTIGATION LABORATORY
4553 n. 2ND
FOREST PARK, GEORGIA 30297-5122

Dear Director:

I am in receipt of your letter dated 18April, 2003. I understand your Lab has not retained the information I seek. What I would like to know then is:

1.  What Lab would your office had used in 1989 to perform DNA testing?

2.  If one of the Labs you might have used was LIFECODE INC., can you provide me with the address to this lab?

3.  If your office still sends off Samples to be tested for DNA analysis, what is the name and address to that Lab?

Any information you can provide me would be most helpful. I know now what I didn''t know in 1989. This DNA test will exonerate me. Thank you for your assistance.

 Sincerely,


David Lucas
cc: FILES



# DEPARTMENT OF THE ARMY
### U. S. ARMY CRIMINAL INVESTIGATION COMMAND
6010 6TH STREET
FORT BELVOIR, VIRGINIA 22060-5506

REPLY TO
ATTENTION OF    APR 2 5 2003

U.S. Army Crime Records Center
(FP03-1119)

Mr. David Lucas
180728, 1-70
100 Warrior Lane
Bessemer, Alabama 35023

Dear Mr. Lucas:

This is in response to your request for release of information from the files of the U.S. Army Criminal Investigation Command (USACIDC). Your request was received on April 23, 2003.

Your request is being, or has been, processed by this agency. The marked paragraph(s) of this letter provide explanation concerning the status of your request:

☐ Your request is being processed in chronological order based upon the date it was received. Paragraphs C1.5.4.2 and C1.5.4.3 of Department of Defense Regulation 5400.7 allows an agency with significant pending requests to process those requests in a multi-track processing system, based upon the date of receipt and the amount of work and time involved in processing the request. The agency determines whether the request is simple or complex. In order for a request to be expedited, the requestor must demonstrate a compelling or urgent need and demonstrate that failure to obtain the information could pose an imminent threat to life or physical safety or loss of substantial due process rights. It should be noted that we are currently processing requests received in (month) (year).

☐ A search of the Army file indexes utilizing the information you provided revealed no files responsive to your request. You are advised that records at this center are Criminal Investigative and Military Police Reports and are indexed by personal identifiers such as names, social security numbers, dates and places of birth and other pertinent data to enable the positive identification of individuals. This can be considered a "no record" response for USACIDC records pursuant to the Privacy Act, Title 5, USC, Section 552a and the Freedom of Information Act, Title 5, USC, Section 552. You have appeal rights concerning this action. (See attached appeal instructions.)

☐ Your request did not contain sufficient information for us to conduct a proper search. You are advised that records at this center are Criminal Investigative and Military Police Reports and are indexed by personal identifiers such as names, social security numbers, dates and places of birth and other pertinent data to enable the positive identification of individuals. Additional information is needed in order to locate records. On occasion, records can be located if the date, location and nature of the offense is provided.

☐ The Privacy Act prevents government agencies from disclosing information to the public without the written consent of the individual, or a court order signed by a judge or magistrate. Absent a Privacy Act waiver or court order, this command will not confirm or deny the existence of a USACIDC record. You may obtain an appropriate release using the attached Privacy Act waiver or consider this a denial of your request pursuant to Title 5, USC, Section 552, Exemptions (b)(6) and (b)(7)(C) of the Freedom of Information Act. (See attached appeal instructions and consent form.)

Printed on ♻ Recycled Paper

☒ A review has determined that the information requested by you was previously released to you on April 7, 2003. A copy of our previous letter is enclosed for your perusal. Therefore, this request is being closed without further action.

☐ In order for this headquarters to appropriately process your request your signature is required; therefore your request is being returned for your signature.

☐ A review of records at this center disclosed a record(s) that is not responsive to your request. However, the requestor or subject may request copies of the record(s) by writing to the address shown on the letterhead. You should cite the following case number(s) in your request: (case numbers)

☐ Coordination is being conducted with our field element(s) to obtain information responsive to your request. Upon receipt, you will be provided with a follow-up response at that time.

☐ The report responsive to your request has been finalized and received at this headquarters. Release of this report is presently being withheld and denied to you because disciplinary or administrative action has not been completed. You may submit another written request for a copy of the report at a later date, after disciplinary or administrative action has been taken. You may consider this an initial denial of your request pursuant to Title 5, USC, Section 552a, Exemption (j)(2) of the Privacy Act and Title 5, USC, Section 552, Exemption (b)(7)(A) of the Freedom of Information Act. (See attached appeal instructions.)

☐ A search of the USACIDC file indexes revealed that an active investigation is in progress with an undetermined completion date. You may submit another written request for a copy of the investigation at a later date, after it is completed. You may consider this an initial denial of your request pursuant to Title 5, USC, Section 552a, Exemption (j)(2) of the Privacy Act and Title 5, USC, Section 552, Exemption (b)(7)(A) of the Freedom of Information Act. (See attached appeal instructions.)

☐ A search of the USACIDC file indexes revealed that the report responsive to your request has been closed by our field element, but has not been received at this center. Your request will be retained in this center until our field element forwards a copy of the report. Upon receipt, the record will be reviewed and a release determination will be made.

☐ The document(s) responsive to your request is currently undergoing a declassification review. Upon completion of this review, your request will be processed in chronological order based on the date it was received.

☐ Other:

Questions regarding this action should be in writing to this center at the address shown on the letterhead.

I trust this will be of assistance to you.

Sincerely,

Phillip J. McGuire
Director, Crime Records Center



**DEPARTMENT OF THE ARMY**
U. S. ARMY CRIMINAL INVESTIGATION COMMAND
6010 6TH STREET
FORT BELVOIR, VIRGINIA 22060-5506

REPLY TO
ATTENTION OF                    APR 0 7 2003

U.S. Army Crime Records Center
(FP03-0795)

Mr. David Lucas
180728, 1-70
100 Warrior Lane
Bessemer, Alabama 35023.

Dear Mr. Lucas:

    This is in response to your Freedom of Information/Privacy
Act (FOIA/PA) requests dated March 7, 2003 and March 21, 2003,
for information pertaining to a DNA test.  Your requests were
received in this office on March 25, 2003 and April 1, 2003.

    The U.S. Army Criminal Investigation Laboratory (USACIL) no
longer maintains information on the test.  Since the USACIL's
involvement appears to be due to a Naval Criminal Investigative
Service (NCIS) investigation, they might maintain test results.
Your request has been forwarded to the NCIS:

        Director
        Naval Criminal Investigative Service
        Headquarters, Code 23C/Rossman
        716 Sicard Street, SE
        Washington Navy Yard, DC  20388-5380

                            Sincerely,

                            Phillip J. McGuire
                            Director, Crime Records Center

Printed c   Recycled Paper

May 13, 2003

Lab Director
Orchid Diagnostics
550 West Avenue
Stamford, Connecticut 06902

Dear Sir or Madam:

SUBJECT:    FINAL ANALYSIS OF DNA TEST RESULT

On or about 12April, 1989, A forensic chemist – Thomas Kotowski – from the U.S. Army Crime Lab, sent to this Lab, that I understand was named Lifecodes Corporation in 1989,stain samples from a rape kit that was being tested at the US Army Crime Lab in Forest Park, GA. At Fort Gilliem. I have recently acquired a copy of the Trial Transcript and the Forensic report. In the forensic report from the U.S. Army Crime Lab (Lab # 89CID131-00269), Thomas Kotowski states the following:

> "Per instructions received from Lt. Brown, USN part of the following
>
> stains were cut out and sent to LIFECODES Corp. on 12April, 1989
>
> via Express Mail (#8024-425-20Y)" [pg. 7 of 7]

I am seeking a complete copy of the final analysis of the test performed by this lab. If there is a fee associated with your lab providing me a copy, please write me back with the cost. I was one of the subjects of the test and I know that the DNA test will exonerate me of the crimes I stand convicted of. I have written the U.S. Army Crime Lab and they have informed me that you would be in receipt of the results I seek.

I know now that DNA evidence has exonerated numerous innocent peoples convicted of crimes they did not commit. I am one of those individuals that have continuously proclaimed my innocence.

I would also like the following questions answered if your records reflect:

1. What date were the final test results completed?

2. On what date did your Lab send the final test results to Lt. Brown, USN or to the NIS in 1989?

3. What carrier was used to deliver the test results and do you have a copy of the receipt and a copy of the return receipt showing who received the package sent by you? If so, can you provide a copy?

As I stated earlier, I was a subject of this test. My SSN # is 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 and

my DOB is6/11/61. The victim's name was Anna Edwards. Other test subjects were:

> David Hill

> Calvert Venture

> Andre Howlett

> James Chapman; and my name is

> David Lucas

I hope that you can provide me with the test results as soon as possible. Thank you for your assistance in this matter.


Sincerely,



David Lucas
cc: files

June 26, 2003

Office of the Judge Advocate General (Code 14)
1322 Patterson Avenue, S.E. Suite 300
Washington Naval Yard, D.C. 20374-5066

Dear Sir or Madam:

SUBJECT: APPEAL FROM FOIA/PA REQUEST ASSIGNED # FO3-0530

On or about 16 April, 2003, I made a request under the FOIA/PA for a copy of the
Final Test Results from a DNA Test that I was a subject of in 1989. This Test was
suppose to have been used in a Court Martial against me, but was not produced by
the prosecution. I have recently acquired a copy of the Forensic Report that was
used at the Trial and it verifies that a DNA test was performed at the insistence of
one Lt. Donald Brown, USN, and the test was performed by an Independent Lab
called LIFECODES Corp., which is now called Orchid Laboratories.

This information is in the possession of the NCIS. The agency has raised 5 U.S.C.
§ 552a (j)(2) as their affirmative defense for non-disclosure. Pursuant to the
language of 5 U.S.C. 552a (j) (2):

> **"General Exceptions**. The head of any agency may promulgate
> rules, in accordance with the requirements of sections 553 (b)(1),
> (2) & (3)  (c), and (e) of this title, to except any system of records
> within the agency from any part of this section **EXCEPT
> SUBSECTIONS (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9),
> (10), and (i)"** if the system of records is –
>
> (2) maintain by an agency or component thereof which performs as
>
>    its principal function any activity pertaining to the enforcement of
> criminal laws, including police efforts to prevent, control, or reduce crime
> or to apprehend criminals, and the activities of prosecutors, courts,
> correctional, probation, pardon, or parole authorities, and which consist of
> …
>
> (B) information compiled for the purpose of a criminal investigation,
> including reports of informants and investigators, and associated with an
> identifiable individual; or



# DEPARTMENT OF THE ARMY
**U. S. ARMY CRIMINAL INVESTIGATION COMMAND**
**6010 6TH STREET**
**FORT BELVOIR, VIRGINIA  22060-5506**

REPLY TO
ATTENTION OF

**2 0 MAY 2003**

CICR-FP (25-55a/FP03-1233)

Mr. David Lucas, 180728, 1-77
100 Warrior Lane
Bessemer, Alabama  35023

Dear Mr. Lucas:

This is in response to your April 24, 2003 request addressed to the U.S. Army Criminal Investigation Laboratory in Forest Park, Georgia.  Your request was received at this headquarters on May 6, 2003.

You are advised that the Freedom of Information Act (FOIA) is not an investigative method whereby an individual can pose questions to federal agencies.  The FOIA merely affords you the right to request federal government records.  The FOIA does not require agencies to answer questions, evaluate documents or circumstances, or speculate in order to respond to questions.

You may wish to contact Orchid Diagnostics, formerly Lifecodes Corporation, by writing directly to them at 550 West Avenue, Stamford, Connecticut 06902 who may or may not have the information you are seeking.

I trust this information will be of assistance to you.

Sincerely,

Phillip J. McGuire
Director, Crime Records Center

Printed on 🔄 Recycled Paper

(C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision."

According to the language in the statute, and Congress intent, subsection (b) is one of the subsections of this section that cannot be exempt from disclosure. Subsection (b) reads as follows:

(b) **Conditions of Disclosure**. No Agency SHALL disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, **except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains**, unless disclosure of the record would be –

"…"

(11) **pursuant to the order of a court of competent jurisdiction;**

"…"

(2) required under section 552 of this title; … ."

The requester, in this case, has made such a request and according to the statute, my request cannot be denied. I am the individual whom the report pertains. I can understand some delay, but this is an important matter. I seek the DNA test that was performed in my case in 1989, but was not used at my Court Martial, nor provided to the defense. I strongly believe that this Test exonerates me from the crimes I stand convicted of in that Court Martial. This Test will corroborate my testimony of Innocents and the victims' testimony, at trial, that I was not one of the persons who attacked her. I was subject to a miscarriage of Justice and the means now exist for me to clear my name and have my service records corrected along with the criminal stigma removed. I would think that would be in all people's interest, especially the Justice systems interest. Any delay in providing this information prolongs my agony and forces me to comply with registration requirements I should not have to.

The Statute provides the means for me to receive this information. I just hope you and you subordinate office comply with the letter of the Law and provide me with the information in an expedient fashion.

– 3 –                                                    June 26, 2003

Further, I am enclosing a formal request for the disclosure of the information I seek just in case my initial letter hadn't meet a requirement the rules you or the head of the agency has promulgated. If there is an official policy governing this, please forward IT AND I WIIL COMPLY WITH IT.

Thank you for taking the time to read this Appeal and I hope we have reached a common position on what's exempt from the exceptions.


David Lucas
cc:      files



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON NAVY YARD DC 20374-5066

IN REPLY REFER TO

5720
F03162
Ser WR 466

22 JUL 03

Mr. David Lucas
100 Warrior Lane
Bessemer, Alabama 35023


Dear Mr. Lucas:

SUBJECT:   YOUR FREEDOM OF INFORMATION ACT (FOIA) APPEAL

     This responds to your letter, dated June 26, 2003, which was received in this office on July 7, 2003.  In your letter, you express dissatisfaction with correspondence sent to you by Headquarters, Naval Criminal Investigative Service (NCIS), in response to your April 11, 2003 FOIA request for a copy of the final results from a DNA test you were subject to in 1989.

     In your letter, you claim that NCIS raised the Privacy Act, 5 U.S.C. § 552a (j)(2), as its "affirmative defense for non-disclosure" in its May 29, 2003 letter to you.  This assertion is incorrect.  The purpose of NCIS' letter was to provide you with an explanation for the delay in processing your FOIA request.  In doing so, NCIS merely set forth a summary of its guidelines, which provide that NCIS investigative files are contained in a system of records exempt from release under provisions of the Privacy Act.  Thus, in an attempt to best satisfy your request, NCIS informed you it would be processing your request under the provisions of the FOIA rather than the Privacy Act.

     My authority under the FOIA is limited to ensuring that the FOIA is properly followed and information is not improperly withheld.  Because NCIS has not denied your request under the Privacy Act or FOIA, there is no decision to appeal.  However, if you have not yet received a final determination regarding your initial FOIA request, please be advised that you have the right to appeal the delay by NCIS in processing that request. Similarly, if you receive a final determination, you will have the right to appeal that determination.


                         Sincerely,

                         *T. A. McPalmer*

                         T. A. McPALMER
                         Commander, JAGC, U.S. Navy
                         Deputy Assistant Judge Advocate General
                         (General Litigation)
                         Acting



**DEPARTMENT OF THE NAVY**
HEADQUARTERS
NAVAL CRIMINAL INVESTIGATIVE SERVICE
716 SICARD STREET SE SUITE 2000
WASHINGTON NAVY YARD DC  20388-5380

5720 F03-0530
SEROOJF/3U0805

AUG   5  2003

Mr. David Lucas, 180728 1-77
100 Warrior Lane
Bessemer, AL 35023

Dear Mr. Lucas:

The processing of your request  for information pertaining to the laboratory test conducted in 1989 by the US Army Crime Lab located in Georgia  has been completed.  All releasable information is provided at enclosure (1),  along with an explanation of exemptions taken under 5 U.S.C. § 552(b)(7)(C).

As the official responsible for the partial denial of your request, I am advising you of your right to appeal this determination.  Your appeal must be postmarked within 60 calendar days from the date of this letter.  An appeal should be addressed to the Secretary of the Navy's designee: Office of the Judge Advocate General, (Code 14), 1322 Patterson Avenue, S.E., Suite 300, Washington Navy Yard, D.C.  20374-5066.  The envelope and letter should bear the annotation "FOIA Appeal".

Falling below the automatic fee-waiver threshold, fees in this case have been waived.

Sincerely,

ZOE S. KUGEARES
LT JAGC, USNR
Staff Attorney

Encl:
(1) Documents

David Lucas
180728 1-77
100 Warrior Lane
Bessemer, Alabama 35023
October 2, 2003

LT. ZOE S. KUGEARES
JAGC, USNR Staff Attorney
Department of the Navy
Headquarters
Naval Criminal Investigative Service
716 Sicard Street SE Suite 2000
Washington Navy Yard DC 20388-5380

RE:    5720 F03-0530   SEROOJF/3U0805

Dear LT KUGEARES:

Subject: APPEAL

On or about 5 August, 2003, I received from you what was suppose to be the
Departments response to my Freedom of Information Act (FOIA/PA) request made in on
or about 16 April, 2003. In my request, I specifically asked for the **"Final Test Results"**
of the DNA test conducted by LIFECODES Inc. (now Orchid Diagnostics) in April or
May, 1989, at the insistence of LT. Donald Brown, USN, 32nd Street Naval Station, San
Diego, CA.

I specifically made reference to the U.S. Army's CID Laboratory Report dated 2 May
1989 (Lab Case Number 89-CID131-0021-8FNA). I SPECIFICALLY stated that on page
7 of this report, in section 18, Lt. Brown instructed the Forensic scientist conducting the
ABO Blood grouping test, Thomas Kotowski, to "cut-out parts of the following stains
and send them to LIFECODES Corp. on 12April 1989 via Express mail" for DNA
testing.

The report you sent me is the report I already have and the report that I made reference
to. **This is not the DNA test that I requested.** Pursuant to the FOIA/PA, I am entitled to
the documents I requested. This is my protest and Appeal, informing you of the error you
made in not sending me the documents I requested. I know ask that you or your
subordinates provide me with the requested documents – The Final Test Results of the

DNA Test conducted by LIFECODES Corp. (now Orchid Diagnostics) in April, 1989 as referenced in the Laboratory Report submitted by the U.S. Army Crime lab (Lab Case Number 89-CID131-0021-8FNA).

I hope this error can be corrected as soon as possible and the correct documents sent to me.


Sincerely,

David Lucas

cc:      files



# ORCHID

Orchid BioSciences, Inc
4390 US Route One
Princeton, NJ  08540
609.750.2283
609.750.6402 fax

August 27, 2004

Mr. David Lucas
180728, 1 – 77
100 Warrior Lane
Bessemer, Alabama 35023

Re:  Your letter of August 10, 2004

Dear Mr. Lucas:

Since our company has gone through a number of acquisitions and dispositions of different businesses, we have as yet not been able to locate the file pertaining to the testing of your DNA.  However, we have not exhausted all possibilities yet, and are in the process of searching records at the Stamford laboratory location, even though this laboratory was recently sold to another entity.

We will keep you apprised as to our progress on the matter.

Sincerely,

Vera Telesh
Legal Associate
Legal Services


Enclosure



# DEPARTMENT OF THE ARMY
### U. S. ARMY CRIMINAL INVESTIGATION COMMAND
6010 6TH STREET
FORT BELVOIR, VIRGINIA 22060-5506

REPLY TO
ATTENTION OF

SEP 1 4 2004

U.S. Army Crime Records Center
(F04-1917)

Mr. Mahindra Nath Varma
Orchard Cellmark-Germantown
20271 Goldenrod Lane, Suite 100
Germantown, Maryland 20876

Dear Mr. Varma:

This is in response to your request for release of information from the files of the U.S. Army Criminal Investigation Command (USACIDC). Your request was received on August 31, 2004.

Your request is being, or has been, processed by this agency. The marked paragraph(s) of this letter provide explanation concerning the status of your request:

☐  Your request is being processed in chronological order based upon the date it was received. Paragraphs C1.5.4.2 and C1.5.4.3 of Department of Defense Regulation 5400.7 allows an agency with significant pending requests to process those requests in a multi-track processing system, based upon the date of receipt and the amount of work and time involved in processing the request. The agency determines whether the request is simple or complex. In order for a request to be expedited, the requestor must demonstrate a compelling or urgent need and demonstrate that failure to obtain the information could pose an imminent threat to life or physical safety or loss of substantial due process rights. It should be noted that we are currently processing requests received in month, year.

☐  A search of the Army file indexes utilizing the information you provided revealed no files responsive to your request. You are advised that records at this center are Criminal Investigative and Military Police Reports and are indexed by personal identifiers such as names, social security numbers, dates and places of birth and other pertinent data to enable the positive identification of individuals. This can be considered a "no record" response for USACIDC records pursuant to the Privacy Act, Title 5, USC, Section 552a and the Freedom of Information Act, Title 5, USC, Section 552. You have appeal rights concerning this action. (See attached appeal instructions.)

☐  Your request did not contain sufficient information for us to conduct a proper search. You are advised that records at this center are Criminal Investigative and Military Police Reports and are indexed by personal identifiers such as names, social security numbers, dates and places of birth and other pertinent data to enable the positive identification of individuals. Additional information is needed in order to locate records. On occasion, records can be located if the date, location and nature of the offense is provided.

☒  The Privacy Act prevents government agencies from disclosing information to the public without the written consent of the individual, or a court order signed by a judge or magistrate. Absent a Privacy Act waiver or court order, this command will not confirm or deny the existence of a USACIDC record. You may obtain an appropriate release using the attached Privacy Act waiver or consider this a denial of your request pursuant to Title 5, USC, Section 552, Exemptions (b)(6) and (b)(7)(C) of the Freedom of Information Act. (See attached appeal instructions and consent form.)

Printed on   Recycled Paper



Orchid BioSciences, Inc
4390 US Route One
Princeton, NJ 08540
609.750.2283
609.750.6402 fax

# ORCHID

October 14, 2004

Mr. David Lucas
180728, 3-65
100 Warrior Lane
Bessemer, Alabama 35023

Re:  Obtaining a copy of Lifecodes' lab report

Dear Mr. Lucas:

As we have exhausted all means of locating your lab report, we are attempting to get a copy of it from the USACIDC.  We have obtained an Information Request Form, which needs to be completed by you, and sent to:

US Army Crime Records Center (F04-1917)
Department of the Army
US Army Criminal Investigation Command
6010 6th Street
Fort Belvoir, VA 22060-5506

Please request your entire record, and specifically the lab report from Lifecodes Corporation.

I am attaching a letter and addressed envelope, which should go along with the completed Information Request Form to the US Army Crime Records Center.

Please feel free to contact me with any questions.

Sincerely,

Vera Telesh
Legal Associate
Legal Services


Attachments



**TEPNEL**
**L I F E C O D E S**

October 25, 2004

Judge Stefan Underhill
United States District Court
District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT 06604

Attention:  Deputy Clerk, Ms. Christine Cody

**Reference: David Lucas versus Lifecodes Corporation**
**Case Number: 3:04MC232SRU**

Cc:     David Lucas
        #180728
        100 Warrior Lane
        Bessemer, AL 35023

Dear Sir:

In regards to the above case, our facility transferred all its records to Orchid Cellmark, 20271 Goldenrod Lane, Suite 120, Germantown, MD 20876-4064 and no such records reside here at our Stamford facility. It is unknown to us whether we were previously in possession of any records pertaining to those listed in the subpoena but even if they existed or still exist now they are no longer in our possession.

Upon delivery of this letter of explanation (registered return receipt) we are fully compliant in our response to the order of the Court.

Sincerely yours,

Jacob Victor, PhD
Executive Director, US Manufacturing Operations
Tepnel Lifecodes Corporation

Cc: L. Nugent

550 West Avenue
Stamford  CT 06902 USA
Tel· 203-328-9500
Fax· 203-328-9599
e-mail· customerservice@tepnellifecodes.com
Internet  www.tepnel.com

Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF _____ CONNECTICUT

DAVID LUCAS

V.

LIFE CODES CORP.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    3:04MC232 SRU

TO:    LIFE CODES CORP.
       550 West Avenue
       Stamford, CT 06902

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

x  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attached Description

| PLACE | DATE AND TIME |
|---|---|
| David Lucas, #180728, 100 Warrior Lane, Bessemer, AL 35023 | copies to be provided by mail |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  | 10-12-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Kevin F Rowe, Clerk, U.S District Court, District of Connecticut, 915 Lafayette Boulevard, Bridgeport, CT 06604

*By* Christian W. Cod, Deputy Clerk

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

**A True Copy**
**ATTEST**

**KEVIN F. ROWE**
**Clerk, U. S. District Court**

By _____

Deputy Clerk

[1] If action is pending in district other than district of issuance, state district under case number

| TEST SUBJECT | : | David Lucas |
|---|---|---|
| DATE OF BIRTH | : | JUNE 11, 1961 |
| SOCIAL SECURITY NUMBER | : | 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 |
| VICTIM'S NAME | : | ANNA EDWARDS |
| SOCIAL SECURITY NUMBER | : | 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 |
| DATE OF BIRTH | : | APRIL 4,1969 |

Produce any and all documents, including medical records, medical reports, lab records, lab reports, Autorads, statistical information, lab histories, records of chemical and other substances used, lab notes, date of receiving samples, date result found, date results sent to U.S. Navy or NCIS, of Lt. Raymond Brown, USN, all expenses reports and payment of the same by any entity on or on the behalf of the Department of the Navy in connection with the above referenced subjects.

*It is further requested that you provide an acknowledgement from The custodian of said Lab records which provides that the Lab Record/reports produced are true and correct copies of the Lab Records of the above referenced subject in the form attached hereto.*

I, _____, hereby certify, acknowledge and affirm that I am the custodian of the attached records of my employer _____ A business organized or operated pursuant to or under the Laws of the State of Connecticut and located in Stamford, Connecticut, and that the attached records of DAVID LUCAS are an exact, full, true, and correct copy of said records pertaining to DAVID LUCAS.

I further certify that I an familiar with these records, and their mode of preparation and I further certify that they were made in the regular course of business for my employer, and that it was the regular course of the business to make such records at the time of the events referred to in the records, or within a reasonable time thereafter.
I further certify that these records were made at the time the occurrence or events therein referred to occurred, or arose, or were made within a reasonable thereafter.

All of which I hereby certify and affirm on this the _____ day of _____, 2004.

_____
CUSTODIAN OF RECORDS


_____
WITNESS

DISTRICT   OF   CONNECTICUT

David Lucas

. V.                                            Case Number:   3:04mc232

Life Codes Corp.

### ENDORSEMENT ORDER

Request for Service of Process, is **GRANTED**.  Request for Signed Subpoena,

is **GRANTED** on substituted party Life Codes Corp.  The Clerk shall issue the

subpoena, and the U.S. Marshal is directed to serve the subpoena.

Dated at Bridgeport, Connecticut, October 12, 2004.


By: _____

Stefan R. Underhill
United States District Judge

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF _____ CONNECTICUT _____

_____ DAVID LUCAS                    **SUBPOENA IN A CIVIL CASE**
                    V.
          LIFE CODES CORP.

                                        Case Number:[1]      3:04MC232 SRU

TO:    LIFE CODES CORP.
       550 West Avenue
       Stamford, CT 06902

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

x   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

       See Attached Description

| PLACE | DATE AND TIME |
|---|---|
| David Lucas, #180728, 100 Warrior Lane, Bessemer, AL 35023 | copies to be provided by mail |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 10-12-07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Kevin F Rowe, Clerk, U.S District Court, District of Connecticut, 915 Lafayette Boulevard, Bridgeport, CT 06604

*By: Christine C. Cody, Deputy Clerk*

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                      DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

TEST SUBJECT                    :    David Lucas

DATE OF BIRTH                   :    JUNE 11, 1961

SOCIAL SECURITY NUMBER :    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

VICTIM'S NAME                   :    ANNA EDWARDS

SOCIAL SECURITY NUMBER :    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

DATE OF BIRTH                   :    APRIL 4, 1969

Produce any and all documents, including medical records, medical reports, lab records, lab reports, Autorads, statistical information, lab histories, records of chemical and other substances used, lab notes, date of receiving samples, date result found, date results sent to U.S. Navy or NCIS, of Lt. Raymond Brown, USN, all expenses reports and payment of the same by any entity on or on the behalf of the Department of the Navy in connection with the above referenced subjects.

*It is further requested that you provide an acknowledgement from*
*The custodian of said Lab records which provides that the Lab*
*Record/reports produced are true and correct copies of the Lab*
*Records of the above referenced subject in the form attached hereto.*

# ACKNOWLEDGEMENT

I, _____, hereby certify, acknowledge and affirm that I am the custodian of the attached records of my employer _____ A business organized or operated pursuant to or under the Laws of the State of Connecticut and located in Stamford, Connecticut, and that the attached records of DAVID LUCAS are an exact, full, true, and correct copy of said records pertaining to DAVID LUCAS.

I further certify that I an familiar with these records, and their mode of preparation and I further certify that they were made in the regular course of business for my employer, and that it was the regular course of the business to make such records at the time of the events referred to in the records, or within a reasonable time thereafter.
I further certify that these records were made at the time the occurrence or events therein referred to occurred, or arose. or were made within a reasonable thereafter.

All of which I hereby certify and affirm on this the _____day of _____, 2004.


_____
CUSTODIAN OF RECORDS


_____
WITNESS

David Lucas

v.                                          Case Number:   3:04mc232

Life Codes Corp.


**ENDORSEMENT ORDER**

Request for Service of Process, is **GRANTED**.  Request for Signed Subpoena,

is **GRANTED** on substituted party Life Codes Corp.  The Clerk shall issue the

subpoena, and the U.S. Marshal is directed to serve the subpoena.

        Dated at Bridgeport, Connecticut, October 12, 2004.



                    By: _____
                         Stefan R. Underhill
                         United States District Judge



**DEPARTMENT OF THE ARMY**
U. S. ARMY CRIMINAL INVESTIGATION COMMAND
6010 6TH STREET
FORT BELVOIR, VIRGINIA 22060-5506

REPLY TO
ATTENTION OF          MAY 0 6 2005

U.S. Army Crime Records Center
(FP05-0986)


Mr. David Lucas
180728, 3-55
100 Warrior Lane
Bessemer, AL 35023

Dear Mr. Lucas:

    This is in response to your request for release of information from the files of the U.S. Army Criminal Investigation Command  (USACIDC).  Your request was received on April 25, 2005.

    Your request is being, or has been, processed by this agency. The marked paragraph(s) of this letter provide explanation concerning the status of your request:

☐ Your request is being processed in chronological order based upon the date it was received. Paragraphs C1.5.4.2 and C1.5.4.3 of Department of Defense Regulation 5400.7 allows an agency with significant pending requests to process those requests in a multi-track processing system, based upon the date of receipt and the amount of work and time involved in processing the request.  The agency determines whether the request is simple or complex.  In order for a request to be expedited, the requestor must demonstrate a compelling or urgent need and demonstrate that failure to obtain the information could pose an imminent threat to life or physical safety or loss of substantial due process rights.  It should be noted that we are currently processing requests received in (month) (year).

☐ A search of the Army file indexes utilizing the information you provided revealed no files responsive to your request.  You are advised that records at this center are Criminal Investigative and Military Police Reports and are indexed by personal identifiers such as names, social security numbers, dates and places of birth and other pertinent data to enable the positive identification of individuals.  This can be considered a "no record" response for USACIDC records pursuant to the Privacy Act, Title 5, USC, Section 552a and the Freedom of Information Act, Title 5, USC, Section 552.  You have appeal rights concerning this action. (See attached appeal instructions.)

☐ Your request did not contain sufficient information for us to conduct a proper search. You are advised that records at this center are Criminal Investigative and Military Police Reports and are indexed by personal identifiers such as names, social security numbers, dates and places of birth and other pertinent data to enable the positive identification of individuals.  Additional information is needed in order to locate records. On occasion, records can be located if the date, location and nature of the offense is provided.

☐ The Privacy Act prevents government agencies from disclosing information to the public without the written consent of the individual, or a court order signed by a judge or magistrate.  Absent a Privacy Act waiver or court order, this command will not confirm or deny the existence of a USACIDC record.  You may obtain an appropriate release using the attached Privacy Act waiver or consider this a denial of your request pursuant to Title 5, USC, Section 552, Exemptions (b)(2), (b)(6) and (b)(7)(C) of the Freedom of Information Act. (See attached appeal instructions and consent form.)

Printed c ♻ Recycled Paper

☐ A review has determined that the information requested by you was previously released to you on (date). A copy of our previous letter is enclosed for your perusal. Therefore, this request is being closed without further action.

☐ In order for this headquarters to appropriately process your request your signature is required; therefore your request is being returned for your signature.

☐ A review of records at this center disclosed a record(s) that is not responsive to your request. However, the requestor or subject may request copies of the record(s) by writing to the address shown on the letterhead. You should cite the following case number(s) in your request: (case numbers)

☐ Coordination is being conducted with our field element(s) to obtain information responsive to your request. Upon receipt, you will be provided with a follow-up response at that time.

☐ The report responsive to your request has been finalized and received at this headquarters. Release of this report is presently being withheld and denied to you because disciplinary or administrative action has not been completed. You may submit another written request for a copy of the report at a later date, after disciplinary or administrative action has been taken. You may consider this an initial denial of your request pursuant to Title 5, USC, Section 552a, Exemption (j)(2) of the Privacy Act and Title 5, USC, Section 552, Exemption (b)(7)(A), (b)(2), (b)(6) and (b)(7)(C) of the Freedom of Information Act. (See attached appeal instructions.)

☐ A search of the USACIDC file indexes revealed that an active investigation is in progress with an undetermined completion date. You may submit another written request for a copy of the investigation at a later date, after it is completed. You may consider this an initial denial of your request pursuant to Title 5, USC, Section 552a, Exemption (j)(2) of the Privacy Act and Title 5, USC, Section 552, Exemption (b)(7)(A), (b)(2), (b)(6) and (b)(7)(C) of the Freedom of Information Act. (See attached appeal instructions.)

☐ A search of the USACIDC file indexes revealed that the report responsive to your request has been closed by our field element, but has not been received at this center. Your request will be retained in this center until our field element forwards a copy of the report. Upon receipt, the record will be reviewed and a release determination will be made.

☐ The document(s) responsive to your request is currently undergoing a declassification review. Upon completion of this review, your request will be processed in chronological order based on the date it was received.

☒ Other: You are advised that a review of our files has determined that you submitted a similar request to this headquarters on March 25, 2003. A copy of our response to your inquiry is enclosed for your perusal. Therefore, this request is being closed without further action.

Questions regarding this action should be in writing to this center at the address shown on the letterhead.

I trust this will be of assistance to you.

Sincerely,

Phillip J. McGuire
Director, Crime Records Center